UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AUSTIN CHAPMAN,                    :
                                   :
        Plaintiff,                 :
                                   :
v.                                 :        Case No. 3:15-CV-1519(RNC)
                                   :
PRICELINE GROUP, INC.,             :
                                   :
        Defendant.                 :

RULING AND ORDER

Austin Chapman, on behalf of himself and others similarly
situated, brings this action against Priceline Group, Inc.
("Priceline"), alleging that Priceline has breached its "Best
Price Guaranteed" promise with regard to purchases of tickets for
travel on Spirit Airlines.  The amended complaint alleges that
Priceline's practices violate Connecticut statutory and common
law.  Priceline has moved to dismiss the amended complaint and
strike the class allegations from count one, which is brought
under the Connecticut Unfair Trade Practices Act ("CUTPA").  For
reasons stated below, the motion to dismiss is denied and the
motion to strike is granted.

I.   Background

The amended complaint alleges that Priceline has
"prominently represented and continues to represent a 'Best Price
Guaranteed' promise for airfare purchased through its website"
that guarantees to consumers the "lowest price on everything
[they] book[]."  (ECF No. 11) ¶ 2.  With regard to travel on
Spirit Airlines, however, Priceline secretly adds its own markup.

Id. ¶¶ 3, 6.  As a result, "Spirit Airlines flights are always cheaper when purchased through Spirit Airlines' website than when purchased through Priceline.com."  Id. ¶ 4.

These allegations are premised on a "Best Price Guaranteed" representation contained in the "Priceline Terms and Conditions" located on the Priceline website, Priceline.com.  Clicking on the words "Best Price Guaranteed" results in the appearance of a statement in bold letters that Priceline "guarantee[s] the lowest price on everything you book."  Id. ¶ 33.  The website goes on to state: "Find a lower price, we'll refund you 100% of the difference.  Book an Express Deal, we'll refund you 200% of the difference.  Guaranteed.  The Priceline.com Best Price Guarantee applies to every Air, Hotel, Rental Car, Cruise and Vacation Package reservation sold on priceline.com!"  Id. ¶ 34.

Plaintiff alleges that reasonable consumers who take advantage of Priceline's best price guarantee "do not think they are merely getting the right to invoke a price-matching scheme."  Id. ¶ 38.  Rather, they "understand the Guarantee and corresponding price-match policy . . . to indicate that Priceline actually is selling the fares at the lowest available price - or, at the very least, that Priceline is not knowingly marking up those prices."  Id. ¶ 35.  Plaintiff alleges that Priceline was aware of this understanding, id. ¶ 37, but failed to disclaim its "Best Price Guaranteed" policy with respect to Spirit Airlines

even though it knew Spirit Airlines flights were available for a lower fare on Spirit Airlines' website, id. ¶¶ 40-41.

The amended complaint alleges that plaintiff purchased Spirit Airlines tickets through Priceline in April 2014, April 2015, and July 2015.[1] Though he "believed he was truly getting the best price for the air travel on Spirit Airlines," id. ¶ 43, "[t]hose same tickets . . . were at that very moment offered for sale for significantly less on Spirit.com." Id. ¶ 45. Plaintiff alleges that he was "aware" of the "Best Price Guaranteed" promise and "would not have purchased his tickets on Priceline.com had he known they had been marked up over the price for which they were being sold at the same time on Spirit Airlines' website." Id. ¶ 47.

Plaintiff seeks to bring this action on behalf of a class of "[a]ll natural persons in the United States of America who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased a ticket for a flight on Spirit Airlines, Inc. through Priceline." Id. ¶ 14. The amended complaint contains five causes of action, all on behalf of the class: violation of CUTPA, breach of contract, breach of the covenant of good faith and fair dealing,

---

[1] It appears that the tickets were purchased on the website KAYAK.com, which is operated by KAYAK Software Corporation. KAYAK is a subsidiary of Priceline, and the Priceline Terms and Conditions, including the terms of the "Best Price Guaranteed" policy, govern purchases on KAYAK.com.

breach of express warranty and unjust enrichment.  Plaintiff
seeks restitution of fares paid to Priceline in excess of the
lowest price available at the time of purchase, disgorgement of
profits, actual and punitive damages, prejudgment interest, costs
and fees.

II.  <u>Discussion</u>

    A.  <u>Motion to Dismiss</u>

        1.  <u>Airline Deregulation Act Preemption</u>

Priceline argues that the CUTPA, breach of duty of good
faith and fair dealing and unjust enrichment claims in counts
one, three, and five of the complaint are preempted by the
Airline Deregulation Act ("ADA").  Plaintiff responds that
Priceline is not the type of entity the ADA was intended to
protect and, even if it were, the claims do not fall within the
scope of the ADA's preemption provision.  I conclude that even if
Priceline may rely on the ADA, it has not shown a sufficient
connection between its Best Price Guaranteed promise and the
conduct of Spirit Airlines or any other air carrier to support
preemption of the state law claims.

Under the Supremacy Clause, U.S. Const. Art. VI, cl. 2,
"state law that conflicts with federal law is 'without effect.'"
<u>Cipollone v. Liggett Grp., Inc.</u>, 505 U.S. 504, 516 (1992)
(quoting <u>Maryland v. Louisiana</u>, 451 U.S. 725, 746 (1981)).  "In
light of principles of federalism, there is . . . a presumption

against preemption," <u>In re Jetblue Airways Corp. Privacy Litig.</u>, 379 F. Supp. 2d 299, 312 (E.D.N.Y. 2005), and the party arguing in favor of preemption bears a heavy burden.  <u>See</u> <u>Abdu-Brisson v. Delta Airlines, Inc.</u>, 128 F.3d 77, 83 (2d Cir. 1997).  "In deciding whether a federal law pre-empts a state statute," the court must "ascertain Congress' intent in enacting the federal statute at issue."  <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 419 (1992) (quoting <u>Metro. Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724, 738 (1985)).

The ADA's preemption provision reads as follows: "[A] State, political subdivision of a State, or political authority of two or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(4)(A).  The term "related to" means "having a connection with or reference to." <u>Morales</u>, 504 U.S. at 384. Though this construction suggests that the statute has a broad reach, state law is not preempted unless it has "a significant impact" on airlines' behavior with respect to prices, routes, or services.  <u>Id.</u> at 390.

Broadly speaking, plaintiff's state law claims do involve prices at which Spirit Airlines tickets are sold.  But this does not, by itself, support ADA preemption.  Priceline must show that enforcing the state laws on which plaintiff relies would have a

significant effect on the "price, route or service *of an air carrier*." 49 U.S.C. § 41713(b)(1) (emphasis added); <u>see also</u> <u>Goodspeed Airport, LLC v. E. Haddam Inland Wetlands &</u> <u>Watercourses Comm'n</u>, 681 F. Supp. 2d 182, 209 (D. Conn. 2010), <u>aff'd</u>, 634 F.3d 206 (2d Cir. 2011).

Plaintiff alleges that "Priceline adds *its own* markup" on tickets for travel on Spirit Airlines. Am. Compl. (ECF No. 11) ¶ 3 (emphasis added). If the disputed markup violates state law, as plaintiff claims, it is not apparent that enforcing the law against Priceline would cause Spirit Airlines to change its pricing practices. Thus, the claims are not preempted.[2]

### 2. Failure to State a Claim

Priceline argues that the complaint must be dismissed because it fails to state a claim on which relief may be granted.

---

[2] <u>Gordon</u>, which Priceline cites in its supplemental memorandum, is not to the contrary. In <u>Gordon</u>, the defendants were technology providers who acted as intermediaries between airlines and travel providers. <u>Gordon v. Amadeus IT Group, S.A.</u>, 194 F. Supp. 3d 236, 239-40 (S.D.N.Y. 2016). The complaint alleged that airlines "rely heavily" on the defendants "to disseminate information to travel agents," and that the defendants "collectively control nearly the entire American market" for such services, "receiving approximately $2.4 billion in fees from airlines annually." <u>Id.</u> at 240. The plaintiffs asserted that the defendants used their market power to charge airlines "supracompetitive fees," causing an "increase [in] airline distribution costs, which in turn raise[d] fares for all travelers." <u>Id.</u> at 241. In other words, the complaint described a clear and substantial relationship between the defendants' conduct and the airlines' behavior with respect to setting the price of their product. Here, in contrast, the complaint contains no allegations about the relationship between Priceline's conduct and Spirit Airlines' prices.

For reasons that follow, I conclude that the allegations of the amended complaint are sufficient to support each of the claims.

To survive a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotation marks and citation omitted). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." Id.

Review of a complaint under Rule 12(b)(6) occurs in two steps. First, the court must separate the complaint's well-pleaded factual allegations from its legal conclusions. Well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," must be disregarded. Id. Then, the court must determine whether the well-pleaded facts support a reasonable inference that the plaintiff is entitled to relief. Id.

Priceline argues that the CUTPA claim fails for two reasons: the "Best Price Guaranteed" policy is not unfair or deceptive under regulations promulgated by the Connecticut Department of Consumer Protection; and the plaintiff's allegations do not satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).

To state a claim under CUTPA, plaintiff must allege that Priceline engaged in "unfair or deceptive acts or practices in the conduct of trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  A practice that is consistent with regulations issued by the Department of Consumer Protection is not unfair or deceptive under CUTPA.  See <u>Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.</u>, 317 Conn. 602, 625-26, 119 A.3d 1139, 1151-52 (2015).  Representations similar to the ones at issue here are covered by the following regulation:

> Advertisements frequently contain representations of guarantees that assure prospective purchasers that savings may be realized in the purchase of the advertiser's products or services.

> Some typical advertisements of this type are "Guaranteed to save you 50%," "Guaranteed never to be undersold," "Guaranteed lowest price in town."

> These advertisements should include a clear and conspicuous disclosure of what the guarantor will do if the savings are not realized, together with any time or other limitations that he may impose.

> Example: "Guaranteed lowest price in town" might be accompanied by the following disclosure: "If within 30 days

> from the date that you buy a sewing machine from me, you
> purchase the identical machine in town for less and present
> a receipt therefor to me, I will refund your money."

Conn. Agencies Regs. § 42-110b-6.

Assuming the content of Priceline's website with regard to the best price guarantee passes muster under this regulation, that is not the end of the matter. Plaintiff argues that "even when the 'fine print' is read in conjunction with the prominent 'best price' representation, the overall impression is still that Priceline is not actively adding surcharges." Pl.'s Opp'n (ECF No. 38) at 22. I agree that this is a plausible interpretation of the Priceline Terms and Conditions. The allegations in the complaint are therefore sufficient to state a claim under CUTPA at least insofar as the claim is based on Priceline's allegedly deceptive addition of a secret markup to the price of Spirit Airlines tickets.

Under Rule 9(b), "circumstances constituting fraud or mistake" must be stated "with particularity." Fed. R. Civ. P. 9(b). This heightened pleading standard applies "when 'the wording and imputations of the complaint are classically associated with fraud.'" Rombach v. Chang, 355 F.3d 164, 172 (2d Cir. 2004). "It is well established that CUTPA claims need not contain the elements of fraud. Thus, CUTPA claims brought in federal court only must satisfy Rule 9(b) if such claims are based on fraud allegations." Tatum v. Oberg, 650 F. Supp. 2d

185, 195 (D. Conn. 2009) (citations omitted). Moreover, the "allegations of fraudulent conduct" must "form a necessary foundation" for the claim. <u>Milo v. Galante</u>, No. 3:09CV1389 JBA, 2011 WL 1214769, at *8 (D. Conn. Mar. 28, 2011).

The amended complaint makes numerous references to fraud and allegedly fraudulent conduct. <u>See</u> Am. Compl. (ECF No. 11) ¶¶ 5, 32, 40, 52 ("Defendant used . . . deception, fraud, false pretense, false promises, and misrepresentation, in violation of CUTPA . . ."), 53 ("As a result of Defendant's fraudulent and unfair business practices . . ."), 54 (Defendant's actions "constitute a fraud . . ."), 56. But it is unnecessary for plaintiff to prove that Priceline committed fraud in order to prevail on his claim based on the markup. Accordingly, the heightened pleading standard of Rule 9(b) does not apply.

ii. <u>Breach of Contract and Breach of Warranty</u>

Priceline moves to dismiss the breach of contract and breach of express warranty claims in counts two and four on the ground that plaintiff has failed to identify a contractual provision or express warranty that has been breached. Priceline argues that, by its terms, the "Best Price Guaranteed" policy is a price-matching scheme, not a promise that the fares advertised on the website are necessarily the lowest available. <u>See, e.g.</u>, Ex. C3 to Janush Decl. (ECF Nos. 32-13, 32-14). Priceline points to the language of the Priceline Terms and Conditions, which include

an express disclaimer to the contrary.  See Ex. A2 to Janush

Decl. (ECF No. 32-9) at 6; Ex. B2 to Janush Decl. (ECF No. 32-10)

at 6.  Plaintiff responds that, at a minimum, reasonable

consumers interpret the Priceline Terms and Conditions as

containing a promise not to intentionally mark-up prices.

As to both the breach of contract and breach of warranty

claims, the issue is one of contract interpretation.  The parties

appear to agree that Connecticut law applies.  See Ex. B2 to

Janush Decl. (ECF No. 32-10) at 8 ("To the extent permitted by

applicable law, the internal laws of the State of Connecticut

shall govern the performance of this Agreement . . . .").  Under

Connecticut law, "the question of contract interpretation" is

generally a question of fact unless "there is definitive contract

language" that allows the court to determine the parties' intent

as a matter of law.  Poole v. City of Waterbury, 266 Conn. 68,

88, 831 A.2d 211, 224 (2003).  Accordingly, the first step in the

analysis is to "ascertain whether the relevant language in the

agreement is ambiguous. . . . [A]ny ambiguity in a contract must

emanate from the language used in the contract rather than from

one party's subjective perception of the terms."  O'Connor v.

City of Waterbury, 286 Conn. 732, 743, 945 A.2d 936, 946 (2008)

(quoting Ramirez v. Health Net of the Ne., Inc., 285 Conn. 1,

13-14, 938 A.2d 576, 585 (2008)).  "Where the language of the

contract is clear and unambiguous, the contract is to be given

effect according to its terms.  A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity."  286 Conn. at 744, 945 A.2d at 946 (quoting <u>Montoya v. Montoya</u>, 280 Conn. 605, 612, 909 A.2d 947, 953 (2006)).

The breach of contract and breach of warranty claims in this case implicate a number of contractual provisions.  The first is a clause in the Terms and Conditions entitled "Best Price Guarantee and Big Deal Guarantee," which provides: "We want you to pay the lowest price possible when you use one of our travel products."  <u>See</u> Ex. A2 to Janush Decl. (ECF No. 32-9) at 10; Ex. B2 to Janush Decl. (ECF No. 32-10) at 10.  This provision includes a hyperlink to a page that sets out "the terms and conditions of our Best Price Guarantee."  <u>See</u> <u>id.</u>

During the relevant time period, the linked page contained three different versions of the "Best Price Guaranteed" policy. The version viewable in July 2015 stated: "WE GUARANTEE THE LOWEST PRICE ON EVERYTHING YOU BOOK.  Find a lower price, we'll refund you 100% of the difference."  Ex. A3 to Janush Decl. (ECF No. 32-11).  The version viewable in March 2015 stated: "The Priceline Negotiator's BEST PRICE GUARANTEE.  Nobody out-deals the Negotiator.  Nobody.  If you find a lower price online for the same itinerary we'll refund 100% of the difference."  Ex. B3 to Janush Decl. (ECF No. 32-12).  The version viewable in April 2014 stated: "The Priceline Negotiator's BEST PRICE GUARANTEE.

Your satisfaction Is His Obsession.  The Priceline Negotiator here.  I'm going to make this short and sweet.  Nobody out-deals the Negotiator.  Nobody.  How sure am I?  So sure, I'm going to make you a special promise and it applies to every priceline.com booking you make.  That goes for airline tickets, hotel rooms, rental cars, cruises, vacation packages and activities.  If you find a lower published price for the exact same itinerary, within 24 hours of booking, Priceline will: Refund you 100% of the difference, or cancel your reservation so you can rebook at the lower price.  Plus we'll give you a $50 Priceline Vacation Package Coupon for your next trip."  Ex. C3 to Janush Decl. (ECF No. 32-13).

In addition, it is necessary to consider a provision entitled "Disclaimer of Warranties," which provides, in relevant part: "WITHOUT LIMITING THE FOREGOING, NO WARRANTY OR GUARANTEE IS MADE . . . THAT A USER WILL RECEIVE THE LOWEST AVAILABLE PRICE FOR GOODS AND/OR SERVICES AVAILABLE THROUGH THIS SITE."  Ex. B2 to Janush Decl. (ECF No. 32-10) at 5.

I agree with Priceline that the quoted provisions, especially the last, make it clear to a reasonable consumer that the "Best Price Guaranteed" policy is a price-matching scheme, not an absolute promise to provide the best price on all purchases.  As discussed above, however, it is plausible that a reasonable consumer would interpret the contract language to

include a promise not to add hidden surcharges.  <u>Cf. In re Online</u>
<u>Travel Co. (OTC) Hotel Booking Antitrust Litig.</u>, 997 F. Supp. 2d
526, 545 (N.D. Tex. 2014).  To the extent plaintiff's breach of
contract and breach of warranty claims rely on this
interpretation of the Terms and Conditions, they withstand the
motion to dismiss.

iii. <u>Duty of Good Faith and Fair Dealing</u>

Priceline argues that the claim in count three, alleging
breach of the implied duty of good faith and fair dealing, must
be dismissed because the duty plaintiff seeks to impose on
Priceline is contrary to the express terms of the contract.
"The covenant of good faith and fair dealing presupposes that the
terms and purpose of the contract are agreed upon by the parties
and that what is in dispute is a party's discretionary
application or interpretation of a contract term."  <u>Hoskins v.</u>
<u>Titan Value Equities Grp., Inc.</u>, 252 Conn. 789, 793, 749 A.2d
1144, 1146 (2000) (quoting <u>Neiditz v. Housing Auth.</u>, 43 Conn.
Supp. 283, 294, 654 A.2d 812 (1992), <u>aff'd</u>, 231 Conn. 598, 651
A.2d 1295 (1995)).  "Most courts decline to find a breach of the
covenant apart from a breach of an express contract term."
<u>Landry v. Spitz</u>, 102 Conn. App. 34, 47, 925 A.2d 334, 344 (2007).
In other words, "the claim [that the covenant has been breached]
must be tied to an alleged breach of a specific contract term,
often one that allows for discretion on the part of the party

14

alleged to have violated the duty." Id. (quoting 23 Samuel
Williston, Contracts § 63:22 (4th ed. 2002)). In addition, the
plaintiff must allege that the defendant acted in bad faith.
Colon v. Commonwealth Annuity & Life Ins. Co., No. 3:08-CV-00079
(PCD), 2008 WL 2185923, at *2 (D. Conn. May 22, 2008). "Bad
faith in general implies both actual or constructive fraud, or a
design to mislead or deceive another, or a neglect or refusal to
fulfill some duty or some contractual obligation, not prompted by
an honest mistake as to one's rights or duties, but by some
interested or sinister motive. Bad faith means more than mere
negligence; it involves a dishonest purpose." Id. (quoting
Habetz v. Condon, 224 Conn. 231, 237-38, 618 A.2d 501, 504
(1992)).

As just discussed, plaintiff plausibly alleges that
Priceline's Terms and Conditions included a promise not to mark-
up ticket prices. Insofar as the bad faith claim is premised on
Priceline's breach of this promise, the claim is sufficiently
tied to the terms of the contract and does not seek to impose a
duty on Priceline contrary to the contract's express terms.
Moreover, plaintiff may be able to prove that Priceline's alleged
practice of secretly adding surcharges to Spirit Airlines tickets
was not motivated by an honest mistake about its duties.

### iv. Unjust Enrichment

Finally, Priceline argues that plaintiff's unjust enrichment

15

claim should be dismissed because he cannot plead both the existence of an enforceable contract and a claim of unjust enrichment.  Plaintiff responds that he should be able to plead these claims in the alternative.  Cases can be found supporting both approaches.  Compare Edwards v. N. Am. Power & Gas, LLC, 120 F. Supp. 3d 132, 148 (D. Conn. 2015) (dismissing unjust enrichment claim without prejudice in light of claim for breach of contract) with Intermed, Inc. v. Alphamedica, Inc., No. CIVA3:09CV00762(JCH), 2009 WL 5184195, at *7 (D. Conn. Dec. 21, 2009) (permitting both claims to be pleaded in the alternative).

Plaintiff appears to concede that the contract governs his recovery.  However, I see no reason to dismiss the unjust enrichment claim at this point in the litigation.  Accordingly, the claim will remain in the case.

B.    Motion to Strike

Priceline moves to strike the nationwide class allegations from the CUTPA claim on the ground that the plaintiff – a Texas resident who was injured, if at all, in Texas – may not represent a class under CUTPA.  Plaintiff responds that Federal Rule of Civil Procedure 23 must be followed.

Under CUTPA, "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of" unfair or deceptive practices is entitled to relief.  Conn. Gen. Stat. § 42-110g(a).  "Persons entitled to

16

bring an action" under this provision "may, pursuant to rules established by the judges of the Superior Court, bring a class action on behalf of themselves and other persons similarly situated who are residents of [Connecticut] or injured in [Connecticut]." Conn. Gen. Stat. § 42-110g(b). "[T]he statutory scheme permits out of state residents to bring a CUTPA action against a defendant located in Connecticut notwithstanding the locus of injury." Metro. Enter. Corp. v. United Techs. Int'l, Corp., Pratt & Whitney Large Commercial Engines Div., No. 3:03CV1685 (JBA), 2004 WL 1497545, at *4 (D. Conn. June 28, 2004). But a nonresident "suffering ascertainable loss outside of Connecticut from unlawful conduct occurring inside the state . . . may not bring a class action because such plaintiff could not be representative of class members with the statutorily required in-state residency or injury characteristics." Id.

Plaintiff contends that under Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., 559 U.S. 393 (2010), the requirements of Rule 23 control whether this suit can proceed as a class action rather than CUTPA's requirement that the class representative be a resident of the state. Conn. Gen. Stat. § 42-110g(b). Though there was no majority opinion in Shady Grove, five Justices agreed that Rule 23 conflicted with New York Civil Practice Rule § 901(b), which precludes a suit to recover a statutory "penalty" from proceeding as a class action. Given

17

that conflict, Rule 23 applied unless it exceeded the substantive rights limitation in the Rules Enabling Act, which provides that rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). The five Justices disagreed on the meaning of the substantive rights limitation. Writing for a plurality of four, Justice Scalia stated that whether a rule falls within the limitation depends on "what the rule itself regulates: If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." Id. at 407 (quoting Miss. Publ'g Corp. v. Murphee, 326 U.S. 438, 446 (1946)). Rejecting a purely procedural test, Justice Stevens stated that "[a] federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary sense of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." Id. at 423.

The Second Circuit has not explicitly endorsed either approach. However, a number of courts within the Circuit have applied Justice Stevens' "intertwined" test. See Fraiser v. Stanley Black & Decker, Inc., 109 F. Supp. 3d 498, 505 (D. Conn 2015); In re Dig. Music Antitrust Litig., 812 F. Supp. 2d 390, 415 (S.D.N.Y. 2011) ("Justice Stevens' approach does, however,

form the 'narrowest grounds' in Shady Grove" (quoting <u>In re</u>
<u>Wellbutrin XL Antitrust Litig</u>., 756 F. Supp. 2d 670, 675 (E.D.
Pa. 2010) (internal quotation marks omitted)); <u>Leonard v. Abbott</u>
<u>Labs., Inc.</u>, No. 10-CV-4676 ADS WDW, 2012 WL 764199, at *12
(E.D.N.Y. Mar. 5, 2012) ("[T]he Court agrees with the majority of
district and circuit courts that have found Justice Stevens
concurring opinion was on the 'narrowest grounds,' and therefore
is the controlling opinion.").

Courts applying the "intertwined" test have held that Rule
23 does not displace restrictions on class actions contained in
state consumer protection statutes.  <u>See</u> <u>Friedman v. Dollar</u>
<u>Thrifty Auto. Group., Inc.</u>, No. 12 CV 02432 WYD KMT, 2015 WL
8479746, at *4 (D. Colo. Dec. 10, 2015)(collecting cases).  The
question presented here – whether Rule 23 displaces CUTPA's
requirement that a class representative be a resident of the
state – was addressed in <u>In re Trilegiant Corp., Inc.</u>, 11 F.
Supp. 3d 82 (D. Conn. 2014).  Judge Bryant concluded that CUTPA's
requirement of an in-state class representative is not displaced
because it serves to limit the right to bring a CUTPA class
action to a subset of CUTPA plaintiffs and is thus substantive
rather than procedural.  <u>Id.</u> at 119.  The issue came up again in
<u>Fraiser v. Stanley Black & Decker, Inc.</u>, 109 F. Supp. 3d 498 (D.
Conn 2015), where Judge Young, sitting by designation, found no
reason to depart from the analysis in <u>In re Trilegiant</u>.  <u>See</u> 109

F. Supp. 3d at 506.

Plaintiff argues that the analysis in <u>In re Trilegiant</u> relies on an "arbitrary and unsupported constitutional 'test.'" Pl.'s Opp'n (ECF No. 39) at 3. He asks me to follow the Eleventh Circuit's analysis in <u>Lisk v. Lumber One Wood Preserving, LLC</u>, 792 F.3d 1331 (11th Cir. 2015). The issue there was whether a provision of the Alabama Deceptive Trade Practices Act ("ADTPA") prohibiting private individuals from bringing a class action was displaced by Rule 23. Finding no meaningful distinction between that prohibition and New York Civil Practice Rule § 901(b) - the prohibition on statutory-penalty class actions at issue in <u>Shady Grove</u> - the Court held that Rule 23 displaced the Alabama statute. <u>Id.</u> at 1335-36.

I am not persuaded that I should follow <u>Lisk</u> to reach a decision at odds with two prior decisions in this District that are directly on point. In the absence of guidance from the Court of Appeals concerning the status of the "intertwined" test and when the test is met, I will follow the prior decisions in this District rather than <u>Lisk</u>.[3] In doing so, I find it significant

_____

[3] Judge Underhill recently declined to adopt the "intertwined" test, reasoning that while "the Stevens concurrence is 'narrower' than the position of the other Justices . . . in the sense that it would reject state procedural rules in fewer cases," it was not the narrowest logic in <u>Shady Grove</u> "because it is not a logical subset of the opinion of the other Justices . . . [who] explicitly reject [the] rationale" that state procedural bars may block causes of action in federal court. <u>In re Aggrenox Antitrust Litig.</u>, No. 3:14-md-2516 (SRU), 2016 WL 4204478, at *5 (D. Conn. Aug. 9, 2016). Judge Underhill

that CUTPA's requirement of an in-state class representative is a prominent part of the statutory scheme, unlike New York Civil Practice Rule § 901(b), which is part of a procedural law that applies to class actions generally.  Insofar as <u>Lisk</u> may be read to suggest that this factor is unimportant to the "intertwined" analysis, I respectfully disagree.

III. <u>Conclusion</u>

Accordingly, the motion to dismiss (ECF No. 31) is hereby denied and the motion to strike (ECF No. 33) is granted.

So ordered this 30th day of September 2017.

/s/RNC
Robert N. Chatigny
United States District Judge

---

concludes that "where a state procedural rule is part of the state's framework of substantive rights, there simply is no controlling Supreme Court holding."  <u>Id.</u> at *6.  Though Judge Underhill may be right, I follow the prior cases in this District that are directly on point and conclude that Rule 23 does not displace the CUTPA requirement at issue.